**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

TELESERVICES GROUP, INC.,

Case No. HG 05-00690
Chapter 7

Debtor.

_____/

NOT FOR PUBLICATION

**MEMORANDUM RE: HUNTINGTON'S FEBRUARY 16, 2010 MOTION -**
**RECONSIDERATION**

On February 16, 2010, The Huntington National Bank ("Huntington") filed a motion entitled

"Huntington National Bank's Motion for Reconsideration of February 2, 2010 Order" (the "February

16, 2010 Reconsideration Motion"). The order referenced in that motion approves the appointment

of Drew, Cooper & Anding ("DC&A") as special litigation co-counsel for the estate in connection

with its prosecution of an adversary proceeding against Huntington to recover fraudulent transfers

that Huntington allegedly received from Teleservices either directly or as a subsequent transferee

through Cyberco Holdings, Inc., a related company. The amount currently sought by Trustee

exceeds $73 million.

DC&A's appointment was not sought until the eve of what turned out to be a twelve day trial

that focused primarily upon Huntington's good faith defense under both Section 548(c) and Section

550(b)(1). Up to then, the trial had been postured as also including the adjudication of an unclean

hands defense that both the Teleservices Trustee and the Cyberco Trustee had raised in response to

Huntington's own motions to substantively consolidate the Teleservices and the Cyberco Chapter

7 cases. In fact, the court had ordered a Rule 7042 consolidation of the adversary proceeding with the two substantive consolidation motions because of the significant overlap in expected proofs regarding Huntington's establishment of its good faith in defending the adversary proceeding and Trustee's establishment of Huntington's unclean hands in defending against the substantive consolidation motions.[1]

Although the adversary proceeding included only Huntington and Trustee as parties, two Teleservices creditors, ePlus and El Camino Resources, indicated that they too would oppose at trial Huntington's motions to substantively consolidate Teleservices and Cyberco. Moreover, all understood that DC&A would be the law firm representing the two creditors at the trial. And finally, all understood that Trustee's law firm and DC&A would be sharing trial responsibilities with respect to the overlapping issues of Huntington's good faith and Huntington's unclean hands so as to avoid duplication of proofs. Indeed, had Huntington's motion to eliminate the unclean hands defense not been granted, this court expects that the trial would have proceeded with DC&A participating as the two creditors' counsel in much the same manner as it did as the estate's co-counsel.

---

[1]Upon reviewing the court's April 28, 2009 Pretrial/Pre-Hearing Order (Teleservices' Adv. Pro. 07-80037 [DN 109]), which is the order that provided for both (1) bifurcation of the adversary proceeding issues and then (2) issue consolidation with the substantive consolidation motions, the court notes that the order refers to Huntington's alter ego defense in the Teleservices' adversary proceeding as opposed to its good faith defense. However, it was always evident to all parties that Huntington's good faith under both Section 548(c) and Section 550(b)(1) would be one of the bifurcated adversary proceeding issues that would be tried as a consolidated issue with the substantive consolidation motions. For example, the final pretrial order specifically identified both good faith and unclean hands as issues that were to be tried simultaneously. *Cf.* October 7, 2009 Final Pretrial/Pre-Hearing Order (Teleservices' Adv. Pro. 07-80037 [DN 181]). In fact, Huntington would not have brought its motion in limine to exclude the unclean hands defense had not Huntington understood that unclean hands was to be an issue at trial.

As for the timing of that motion, Huntington certainly had the right to file it as late as it did. Moreover, Huntington's motivation, good or bad, for not filing the motion earlier is not relevant. What does matter is that Trustee's strategy for proceeding against Huntington at trial contemplated a permissible sharing of trial responsibilities with DC&A as the two creditors' attorneys and that that strategy had been disrupted on the eve of trial by the success of Huntington's motion. Specifically, the court rendered its decision on October 26, 2009, only eight days before the November 4, 2009 trial was to begin. Therefore, it is understandable that Trustee sought to regroup by adding DC&A as co-counsel at the last minute so that she could still get the benefit of what DC&A had up to that point intended to offer as ePlus's and El Camino's counsel under the arrangement previously reached.

It is equally understandable that Huntington has vigorously contested DC&A's continued participation in the trial as the estate's co-counsel. There is clearly no love loss between DC&A and the two law firms Huntington itself has utilized in these bankruptcy proceedings and in the parallel district court action that DC&A's clients brought against Huntington. John Anding, the DC&A attorney who Trustee in particular intended to employ, is an aggressive trial attorney who has made a career of successfully suing banks. His style is provocative and he asks hard questions. Indeed, in this instance Mr. Anding accused Huntington of actually conspiring with Barton Watson, Cyberco's principal, to defraud the various equipment finance companies.

Therefore, the court does not give any credence to Huntington's argument that it opposes DC&A's appointment only out of concern for the Teleservices estate and its creditors. As the court has previously noted, Huntington had no lending relationship with Teleservices and, as such, its interest as a creditor of the Teleservices estate is questionable. Moreover, neither the United States

3

Trustee nor any recognized Teleservices creditor ever appeared in opposition to DC&A's appointment. And finally, whatever compulsion Huntington may have had to raise this concern on behalf of the Teleservices estate pales in comparison to the tactical advantage that Huntington clearly stood to gain in disrupting the Trustee's trial presentation in an adversary proceeding where Huntington stands to lose millions of dollars.

As for a supposed adverse interest, the only conflict that Huntington contends might have impeded DC&A's zealous representation of the estate is a claimed  competition between the Teleservices estate and DC&A's own clients for the same pot of money. This court cannot speak about what is at issue in the parallel district court litigation against Huntington. However, the court does know that Trustee is not competing with the plaintiffs in the district court action for any identifiable fund held by Huntington. Rather, the relief sought in this adversary proceeding is only a money judgment under Section 550(a) based upon Huntington being the recipient of numerous transfers of money that long ago passed through Huntington's hands. Therefore, even if DC&A's clients are seeking a constructive trust in the separate district court action, it will have no bearing upon the relief Trustee is seeking in this adversary proceeding so long as Huntington is sufficiently solvent to honor whatever judgment is ultimately entered against it.[2]

---

[2]Huntington's conflict argument is in fact premised upon the theory that Trustee's success depends upon the avoidance of transfers whereas the creditors' claims in the district court action depends upon the very same transfers not being avoided. But again, that theory would have merit only if Trustee and the two creditors were competing against the same fund held by Huntington. This court doubts whether there remains any traceable res vis-a-vis the unjust enrichment claims or whatever other claim the two creditors might currently have in the district court litigation. However, this court is satisfied based upon the proofs presented in this case that the transfers Teleservices made to Huntington in 2003 and 2004 lost their identity long ago and Huntington certainly has not offered anything to suggest otherwise. As such, the supposed conflict Huntington has identified does not rise to the level of the "actual conflict of interest" required for DC&A's disqualification under 11 U.S.C. § 327(c).

4

And finally, even if DC&A's advocacy on behalf of Trustee was anything short of zealous, which it clearly was not, it did not significantly influence the court's decisions concerning Huntington's good faith in any event. For example, the court did not adopt either of the two basic themes that Attorney Anding and co-counsel advocated at trial – i.e., that Huntington knowingly conspired with Cyberco or, in the alternative, that Huntington lacked good faith because it did not respond to the so-called red flags as they insisted a prudent bank would have. To the contrary, this court decided the good faith issue based largely upon standards consistent with those posited by Huntington and upon the evidence provided by its own witnesses and its own documents. *See* March 17, 2011 Opinion [DN 358].

In sum, this court remains satisfied that Trustee's employment of DC&A as co-counsel for the estate in connection with the trial of its fraudulent transfer claims against Huntington did not have an adverse impact upon the estate and that its appointment was otherwise appropriate. *Cf.* 11 U.S.C. § 327(c). Therefore, Huntington's motion for reconsideration is DENIED. The court will prepare a separate order consistent with this opinion.

3/25/11

Hon. Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this 29th day of March , 2011
at Grand Rapids, Michigan.

5